UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:06CR14 HEA |
| | ) | |
| BRANDON TRIGG, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Magistrate Judge Medler's Report and Recommendation that Defendant Brandon Trigg's Motion to Dismiss the Indictment, [#15], and Motion to Suppress Statements and Evidence, [#14], be denied. Defendant Trigg has filed a written objection to the Report and Recommendation, arguing simply that the Report and Recommendation "should not be adopted because it is contrary to the facts of the case and relevant case law." In light of the vague and nonspecific nature of Defendant's objection, the Court will construe it as an objection to the Report and Recommendation in its entirety. Therefore, the Court will conduct a *de novo* review of Judge Medler's Report and Recommendation pursuant to 28 U.S.C. § 636.

## Findings of Fact

**Events at 3630 Phillips**

Defendant Trigg objects to Judge Medler's findings on the basis that they are against the weight of the evidence. The record reveals the facts in this case to be as follows:

During the week of October 17, 2005, Detective Wendel Ishmon of the St. Louis Metropolitan Police Department was contacted by a confidential informant ("CI") with whom Det. Ishmon had worked over the past year and who had proven to be reliable.[1] The CI informed Det. Ishmon that Lonnie Davis, a black male, 50-52 years of age, medium complexion, approximately 5'7" to 5'8" tall, and weighing approximately 200 pounds, was selling marijuana and cocaine from a residence located at 3630 Phillips, Apt. B, St. Louis, Missouri. The CI told Ishmon that he/she observed Davis remove narcotics from his person and sell them to various people. The CI also claimed Davis stored the narcotics and U.S. currency obtained from the sale of the narcotics in his apartment and inside the attached garage. According to the CI, Davis would sell the narcotics when a prospective purchaser knocked on the front door of the residence. Davis would admit the prospective purchaser, and following the drug transaction, the purchaser would exit the apartment and depart the area.

On October 20, 2005, Detective Ishmon and Det. Leo Liston conducted

---

[1] The CI had previously supplied intelligence and information which proved to be reliable and led to four narcotics related arrests. All cases were pending in the City of St. Louis Circuit Attorney's Office at the time of the search warrant application.

surveillance of 3630 Phillips, Apt. B in their covert vehicle. During that time, Dets. Ishmon and Liston observed several people knock on the front door, be permitted to enter the apartment, and then exit the apartment after a short period of time.

Dets. Ishmon and Liston again conducted surveillance in their covert vehicle on October 24, and 25, 2005, and observed persons who knocked on the door of the residence be permitted in by a black male fitting the description of Lonnie Davis. The people would then leave after a short period of time and depart the area. Based on Det. Ishmon's experience, such short-term visits by persons to the same residence were consistent with drug trafficking at a known drug house. The CI also told Det. Ishman that he/she had been inside the residence within the last 18 hours preceding the warrant application and observed a large amount of marijuana and cocaine inside the residence.

Det. Ishmon presented the warrant application and affidavit in support thereof to the Honorable Evelyn Baker of the Missouri Circuit Court in the City of St. Louis. Based on the information contained therein, Judge Baker signed the search warrant on October 25, 2005 at 2:10 p.m.

Before executing the search warrant, Det. Ishmon again conducted surveillance of the residence for the purpose of determining whether their target was present, how many other individuals were present, and what type of entry that would be necessary for officer safety. As he surveilled, he saw Defendant Brandon Trigg approach on a

bicycle. Det. Ishmon observed Defendant to be paying attention to his right waistband area, as if to be concealing something there, like a weapon. Defendant then entered the residence.

Det. Menendez informed Det. Ishmon that he saw three subjects exit the rear of the building, so Ishmon drove to the south alley where he observed three persons standing next to two cars. The two males had carried bags from one of the cars into the residence, and when they returned, they were not carrying anything. Det. Ishmon told the other officers that they should approach the subjects and attempt to learn if the target, Lonnie Davis, was in the building. The three subjects were Charles Upshaw, Jose Hernandez, and an Hispanic female.

Officers proceeded to the residence, knocked on the door, and announced their presence and that they were in possession of a search warrant. They received no response. They knocked and announced again, but received no response. Dets. Ishmon, Menendez, and Liston entered together. The door to the residence was open.

Officers observed Lonnie Davis and another individual, identified as William Hackworth, in the living room. The two men were handcuffed for officer safety. As Det. Menendez attempted to clear the area for officer safety, he approached the west bedroom and saw Defendant Trigg standing at the closet with his back towards Menendez. Det. Menendez heard something fall to the floor. Defendant turned to face

Menendez and placed his hands up. Det. Menendez handcuffed Defendant for safety, but he was not under arrest. Det. Ishmon took Defendant to the living room and left him with Det. Liston and the two other individuals in the residence. Ishmon went back to the west bedroom where he saw a .380 handgun on the floor by the closet, where Defendant had been standing. There were three rounds in the gun, which Ishmon removed. Det. Ishmon then returned to the living room and relocated Defendant to the dining room where he read Defendant his constitutional rights per *Miranda.*

Defendant had no way of knowing that the .380 handgun had been seized, yet after being read his rights, Defendant stated, "That gun ain't mine. I got a conviction. I don't even live here." Defendant was placed under arrest, again advised of his rights, and taken back to the living room and later placed in the police cruiser.

The search of Lonnie Davis' bedroom uncovered 14 bundles of marijuana, a loaded .45 caliber handgun, clothing and mail indicating Lonnie Davis' residence at the apartment. Lonnie Davis was arrested for drug trafficking and weapons offenses. He was advised of his rights per *Miranda*, after which he stated that the weed was his and that the others in the residence didn't know anything about it. He also claimed to be keeping the gun in his room for a friend, but made no mention of the .380 caliber gun found where Defendant Trigg was standing in the west bedroom.

Officers also located more marijuana in the garage. Det. Ishmon retrieved the

key to the garage from Lonnie Davis' pocket and discovered a large tub with seven bundles of marijuana, two large digital scales, plastic bags, blue plastic wrap, a gun holster, and a box of fabric softener.

The three individuals who had earlier been seen going into the residence with bags were then spoken to by Det. Ishmon. After being advised of his *Miranda* rights, Charles Upshaw was asked about the cars. Upshaw claimed he did not own the cars. Officers located two keys to the Chevy Lumina, which had a hidden compartment in the rear bumper area and had earlier contained the bags that were carried into the residence. Jose Hernandez was also advised of his *Miranda* rights and asked about the cars. Hernandez claimed he owned the Buick LeSabre but said he had no knowledge of the other car. The third individual, Hernandez' wife, Benitez, told officers they were on their way to Indianapolis and had come to the apartment to bring Upshaw's son some clothes. William Hackworth, who had been inside the residence, said he was just visiting and had no knowledge of the guns or drugs.

**Events at 328 Hill**

Officer Joseph Lankford[2] also testified at the evidentiary hearing and stated that on December 7, 2005, he obtained a search warrant for the residence located at 328

---

[2]At the time of his testimony, P.O. Lankford had been with the St. Louis Metropolitan Police Department for approximately two and a half years.

Hill, St. Louis, Missouri. Lankford prepared an application and affidavit in support of the search warrant, which describes the residence with particularity and describes the objects of the search as crack cocaine, currency, records, firearms, and related paraphernalia. The affidavit also states that on November 28, 2005, Lankford was contacted by CI and advised that crack cocaine and illegal weapons were being stored inside 328 Hill. Lankford considered the CI reliable because he/she had provided Lankford information which led to the arrest of six persons for possession of illegal drugs, and warrants were issued in those cases.

The CI identified an individual at 328 Hill known only to him/her as "T" and was described as a black male, approximately 25 years old, 5'10" and 180 pounds. He/she informed Lankford that T sells crack from the residence at 328 Hill and would do so in the following manner: prospective purchasers would approach the residence through the front door. After knocking and gaining admittance, they would wait in the living room. T would retrieve crack cocaine from several places throughout the residence and from his person (including from between his legs). T had also been seen removing crack cocaine from the inside of a large speaker located in the living room. The CI informed Lankford that T is known to be armed and had seen a black semi-automatic handgun lying on the coffee table in plain view. After the drug transactions were completed, the purchasers would quickly leave the residence.

Between November 28, 2005 and December 1, 2005, Officer Lankford conducted surveillance of 328 Hill and observed several individuals enter the residence and leave after only a short time. He observed individuals approach the residence by crossing a soccer field located north of the residence.

On December 5, 2005, Lankford again surveilled the residence and observed short term visitors. On December 6, Lankford was contacted by the CI, who informed Lankford that he/she had been inside 328 Hill within the last 24 hours and observed T to be in possession of crack cocaine, and a black semi-automatic handgun sitting on the coffee table in the front room.

On December 7, 2005, Officer Lankford presented his application and affidavit in support of a search warrant to a Missouri Circuit Court Judge in the City of St. Louis.[3] Based on the information contained therein, the judge signed the search warrant on that day at approximately 3:20 p.m.

On December 9, 2005, the search warrant was executed. The search team, which consisted of officers from the Mobile Reserve Unit, District Officers, and Officer Lankford, approached the residence through the gangway. Mobile Reserve Officers knocked and announced "Police officers, search warrant" but received no answer.

---

[3]The record does not contain this document, so it is assumed it was not admitted into evidence. Magistrate Judge Medler also noted that the name of the Circuit Court Judge was not legible on the document. Officer Lankford did not state the judge's name during his testimony.

After less than a minute, the officers breached the front door. Defendant Trigg was sitting in the living room facing the front door. A woman, later identified as Defendant's girlfriend, Valerie Gavin, was in the east rear bedroom, and her child was in the west rear bedroom.

Defendant Trigg was handcuffed and remained seated in the living room while officers searched the residence.[4] The search revealed a piece of crack cocaine wrapped in plastic inside the speaker in the living room, a box of .45 ammunition on a ledge in the living room, and an ammunition box in the east bedroom on the shelf in the closet. The clothing in the closet was both men's and women's. Officers located a white plate with residue under the bed, along with razor blades, a digital scale and plastic baggies with their corners cut out. They also discovered a receipt for the purchase of a .45 caliber handgun and a telephone bill in Defendant's name. As officers searched, Defendant repeatedly said, "Is that all you found?" Defendant was arrested for illegal narcotics and advised of his constitutional rights per *Miranda.* Defendant Trigg stated that he understood those rights. Defendant also exclaimed repeatedly, "I ain't got no gun." In reference to the crack cocaine, Defendant stated, "That shit ain't mine" and "I don't know how it got there, I don't know what this is all about. This is all bullshit."

---

[4] Defendant also asked officers to open the door, because he claimed he was hot. Defendant was wearing a sleeveless white shirt and light pants.

When Officer Lankford asked Defendant about the ammunition, Defendant stated, "Is it illegal to have bullets?" Defendant was searched incident to arrest and $580.00 was located in Defendant's pants pocket.

Valerie Gavin testified at the evidentiary hearing that at the time of the search of 328 Hill, the residence was leased in her name. She claimed to have lived there with her daughter since September, 2005. She testified that Defendant did not live at 328 Hill with her, but later clarified that Defendant lives there sometimes and sometimes with another friend. She claimed the phone bill had been placed in Defendant's name because "she had recent bills in her name."

Ms. Gavin testified that on the night the police came to the residence, both she and Defendant Trigg were asleep. She stated that when she woke up, there was a police officer in her room who had a gun in her face. Officers placed "wires" on Ms. Gavin's arms and took her into the living room with Defendant. She stated that when officers discovered her gun permit and a receipt for a .45 handgun, she told them that she purchased the gun for protection. She also told the officers that the gun was not in the home. When officers showed Ms. Gavin the bullets they found, she told them "It's all mine." She claimed the clothing in the closet was also all hers.

Ms. Gavin testified that she purchased the .45 caliber handgun and ammunition in August, 2005 from a gun shop in South County and that she was with her cousin

Tony Griffin. She claimed she did not know his current address because he was "between girlfriends." She also indicated that she never fired the gun and had only loaded it. She did not know what side the safety was on. She claimed she did not see officers take photographs or take the speaker apart, but that dogs were brought by the officers to search the house. Ms. Gavin was not arrested.

Ms. Gavin claims officers tore up her house, were upset because they couldn't find more evidence, and used profanity which frightened her daughter. She also stated that she and Defendant Trigg went to the Internal Affairs Division and reported Officer Lankford, informing them that he was unprofessional and very upset that all they found was one rock of crack cocaine.

Gavin also claimed that her box spring of her bed is on the floor, so the 14 plastic baggies could not have been discovered there. She said that the white plate with razor blades were hers and that she had been holding the digital scale for her ex-husband. She informed the Magistrate Judge that her ex-husband died on February 2, 2006 because he "swallowed something."

Defendant Trigg objects to Judge Medler's findings of fact on the basis that they are against the weight fo the evidence. The Court, however, concludes otherwise. A thorough review of the recorded testimony from the February 17, 2006 evidentiary hearing and supporting documents reveals the facts to be as set forth above. In no way

do such facts deviate from Judge Medler's findings. Detective Ishmon and Officer Lankford testified as to all of the facts set forth above, under oath, and to the best of their recollection. Defendant, on the other hand, did little to refute the testimony of Det. Ishmon or Officer Lankford on cross-examination. This Court finds the evidence offered by the Government to be credible, and Defendant's objections to Judge Medler's findings of fact are overruled.[5]

## Conclusions of Law

Defendant Trigg merely states that Judge Medler's recommendation was contrary to the law and against the weight of the evidence and testimony. Defendant's objections as to Judge Medler's conclusions of law are nebulous in nature, thus the Court must assume Defendant objects to the Judge Medler's conclusions of law in their entirety.

**Events at 3630 Phillips**

First, Defendant does not have standing to challenge the search of 3630 Phillips. In cases involving Fourth Amendment violations, courts determine standing by determining whether a defendant had a reasonable expectation of

---

[5]As Magistrate Judge Medler notes in her Report and Recommendation, there are discrepancies between Officer Lankford's and Ms. Gavin's versions of the events which took place at 328 Hill. While these discrepancies may be significant with regard to Defendant's guilt or innocence, these discrepancies do not impact the suppression issues before the Court.

privacy in the area searched or the items seized. *Katz v. United States,* 389 U.S. 347, 361 (1967); *Rakas v. Illinois,* 439 U.S. 128, 134 (1978); *United States v. Morales,* 737 F.2d 761, 763 (8th Cir. 1984). In determining whether a person's expectation of privacy is legitimate, the person must exhibit an actual subjective expectation of privacy and society must be prepared to recognize that expectation as objectively reasonable. *Katz,* 389 U.S. at 361. The Eighth Circuit has expanded on this rule of law, holding that factors relevant to the determination of standing include: "ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994) (*citing United States v. Sanchez,* 943 F.2d 110, 113 (1st Cir. 1991)). Defendant has the burden of proving that there was a reasonable expectation of privacy. *United States v. Kiser*, 948 F.2d 418, 423 (8th Cir. 1991), *cert denied,* 503 U.S. 983 (1992).

In this case, the record reveals that 3630 Phillips was the residence of Lonnie Davis. Lonnie Davis was the target of the search and the one identified by the CI as the person selling drugs from the residence. Defendant even said that he did not live

- 13 -

there.  There is no circumstance that would make it objectively reasonable for Defendant Trigg to argue he had a subjective expectation of privacy.  As such, Defendant lacks standing to challenge the probable cause for the search, the execution of the warrant, and the items seized from the residence.

Defendant is charged with having possession of the .380 firearm seized from the residence.  Det. Ishmon testified to observing Defendant riding a bicycle to the residence and paying attention to his right waistband as if he was attempting to conceal something such as a weapon.  During the search, Det. Menendez heard something hit the floor when he approached Defendant in the west bedroom.  Det. Ishmon went to the bedroom and saw the .380 firearm on the floor where Defendant had been standing.  Det. Ishmon was lawfully in the residence executing the search warrant, thus the .380 firearm, which was in plain view, will not be suppressed. *Coolidge v. New Hampshire,* 403 U.S. 443, 464-73 (1971) (when police are lawfully in a particular location and observe items in plain view which they have probable cause to believe are contraband or evidence of a crime, they may seize such items without a warrant); *see also United States v. Garner,* 907 F.2d 60, 62 (8th Cir. 1990), *cert denied,* 498 U.S. 1068 (1991).  In addition, the evidence reveals that Defendant abandoned the property by dropping it.  Warrantless searches and seizures and seizures of abandoned property do not violate the Fourth

Amendment. *United States v. Segars,* 31 F.3d 655, 658 (8th Cir. 1994). Defendant dropped the gun, presumably so that it would not be found on his person. Therefore, the firearm will not be suppressed.

Defendant's statements will likewise not be suppressed. Without knowing that the gun had been seized and not in response to any questioning, Defendant told officers, "That gun ain't mine. I got a conviction. I don't even live here." Even though Defendant was not under arrest and only being detained, Det. Ishmon read Defendant his *Miranda* rights. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admission is not affected by our holding today." *United States v. Butzin,* 886 F.2d 1016, 1018 (8th Cir. 1989) (*quoting Miranda v. Arizona,* 384 U.S. 436, 478 (1966)). Defendant, having fully been advised of his rights, waived them when he made his statements.

Defendant Trigg was placed under arrest after making his spontaneous statements and was again advised of his rights. All statements made by Defendant were made after being fully advised of his constitutional rights per *Miranda.* Based on the testimony adduced at the evidentiary hearing, this Court finds that statements made by Defendant after his arrest at 3630 Phillips were the product of Defendant's free and deliberate choice, rather than intimidation, coercion, or deception. *See Moran v. Burbine,* 475 U.S. 412 (1986).

**Events at 328 Hill**

Defendant had an expectation of privacy at 328 Hill, since Valerie Gavin testified that Defendant lived at her house "back and forth" and admitted that the phone bill was in Defendant's name. The subject of the officers' search was a man known as "T", which is believed to stand for Trigg, Defendant's last name. Thus, Defendant has standing to challenge the search of 328 Hill.

The Court first finds the search of 328 Hill to be valid. Officers possessed the requisite probable cause for obtaining the search warrant, because the officers had reason to believe that narcotics and weapons would be found in the residence.

Probable cause means a "fair probability that . . . evidence of a crime will be found in a particular place," given the circumstances set forth in the affidavit. *United States v. Horn,* 187 F.3d 781, 785 (8th Cir. 1999) (*citing Illinois v. Gates,* 462 U.S. 213, 238 (1983)). When reviewing the legal sufficiency of the basis for the issuance of a search warrant, the Court must determine whether the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the warrant. *United States v. Luloff,* 15 F.3d 763, 768 (8th Cir. 1994). There must be a fair probability, based on the totality of circumstances described in the officer's affidavit, and the veracity and basis of knowledge of the persons supplying hearsay information, that contraband or evidence of a crime will be found in a particular place.

*United States v. Coleman,* 349 F.3d 1077, 1083 (8th Cir. 2003).

The record reflects that officers obtained reliable information from a confidential informant that Defendant was selling narcotics from 328 Hill and was in possession of a handgun. These facts and circumstances were sufficient to warrant the officers' belief that drugs and/or firearms were being kept inside the residence. The affidavit informed the issuing judge of these occurrences and that the CI was known to be reliable based on prior information he/she had provided. Thus, the search warrant application was based on the officers' probable cause and the issuing judge had a substantial basis for finding that probable cause existed that narcotics, firearms, and/or other evidence of a crime would be discovered at 328 Hill. Therefore, the search warrant was lawfully issued.

As for the search warrant's execution, there is no evidence that officers executed the warrant in any other way than lawfully. After knocking on Defendant's door and waiting for a response, officers entered the residence. Defendant was temporarily detained by being placed in handcuffs and positioned in the living room. Nothing in the record suggests that the execution of the warrant was illegal. *United States v. Schenk,* 983 F.2d 876, 878 (8th Cir. 1993) (there is no hard-and-fast time limit that officers must wait after announcing their presence and purpose before entering the residence).

A search of the residence uncovered crack cocaine in the speaker (a violation of

state law) and ammunition. Defendant was then advised of his *Miranda* rights. Defendant then made exculpatory statements regarding the narcotics. When asked about the ammunition, Defendant asked if it was illegal to have bullets. He also asked officers repeatedly, "Is that all you found?" These comments were not in response to questioning and were spontaneous. As set forth, *supra,* this Court finds that statements made by Defendant after his arrest at 328 Hill were the product of Defendant's free and deliberate choice, rather than intimidation, coercion, or deception.

Defendant's person was searched and $580 was recovered from his pants pocket. The search of Defendant's person was lawful because it was incident to his lawful arrest. *Chimel v. California,* 395 U.S. 752, 763 (1969). Therefore, the U.S. currency found on Defendant's person will not be suppressed. Defendant's objections to Judge Medler's conclusions of law are overruled.

## Conclusion

Based on the foregoing findings and conclusions, the Court adopts Judge Medler's well-reasoned Report and Recommendation in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Brandon Trigg's Motion to Dismiss the Indictment, [#15], is denied;

**IT IS FURTHER ORDERED** that Defendant Brandon Trigg's Motion to Suppress Statements and Evidence, [#14], is denied.

Dated this 27nd day of March, 2006.

*[signature]*

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE